# United States District Court
# Northern District of Indiana
# Hammond Division

| | |
| --- | --- |
| WILLIAM L. COLLINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 3:07-CV-394 JVB |
| | ) |
| JUDGE THOMAS J. ALEVIZOS, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff William Collins filed suit against six defendants, four of whom have been dismissed, for actions stemming from his arrest and subsequent detention at the LaPorte County Jail. Plaintiff's surviving claims are those against Defendants Sherry Kozlowski and Richard Buell, in their individual capacities, for allegedly violating his Fourteenth Amendment right to medical treatment. Defendants moved for summary judgment and to strike Plaintiff's response to Defendants' motion for summary judgment. For the reasons stated below, the Court grants Defendants' Motion for Summary Judgment and denies Defendants' Motion to Strike.

**A. Factual and Procedural Background**

On January 28, 2006, Plaintiff William Collins was detained and subsequently arrested by Officer Robert Fargo as a suspect in the robbery of Judge Thomas Alevizos. Fargo transported Plaintiff to Maxine's Restaurant, where Judge Alevizos and two other police officers, Allen Shultz and Christopher Frohelke, were located. Plaintiff alleges that Judge Alevizos poked

him in his left eye while he was handcuffed and removed from the police car for identification. Although Plaintiff suffered from glaucoma in both eyes for about six years before this altercation and had surgery on his left eye, he maintains that this incident, and his subsequent treatment by Defendants Sherry Kozlowski and Richard Buell caused him to lose his sight in his left eye.

Plaintiff was transported to LaPorte County Jail where he was booked on charges of robbery and criminal mischief. At intake, Plaintiff did not have visible signs of injury and did not request medical treatment. (Defs.' Ex. E). Plaintiff reported that he suffered from glaucoma and was taking several medications including: Depakote, Seraquil, Paxil, Trazadone, and eye drops. (Defs.' Ex. F). Because of this, the intake officer filled out a medical referral. (*Id.*).

Three weeks later, on February 14, 2006, Nurse Burddick, one of two nurses employed to treat prisoners at the LaPorte County Jail, evaluated Plaintiff and noted that he had glaucoma. Plaintiff verbally requested aspirin and medical treatment for headaches caused by his glaucoma from Defendant Kozlowski, the other nurse responsible for treating LaPorte County Jail inmates, and was told to fill out a request form. (Compl. ¶ 11). Plaintiff filed two inmate request forms seeking medical attention for his eye, the second of which was dated February 19, 2006. (Compl. ¶ 12). Defendant Kozlowski responded to Plaintiff's request on February 21, 2006, indicating that he would be worked into the next available appointment and that information about his medications was needed. (Defs.' Ex. L). Plaintiff was initially noncompliant with Defendant Kozlowski's request, but eventually informed her that he previously received treatment for his glaucoma at Wishard Hospital. (Kozlowski Aff. ¶ 10). The jail physician examined Plaintiff the next day, and determined that he needed to be seen by an ophthalmologist or that his medical records from Wishard Hospital were required. (Kozlowski Aff. ¶ 13). Defendant Kozlowski

requested Plaintiff's medical files from the hospital on February 23, 2006. (*Id.* at ¶ 14).

Between March 3, 2006, and March 15, 2006, Dr. Benjamin Mannix, an ophthalmologist, treated Plaintiff four times. (Buell Aff. ¶ 19). Plaintiff was given all medication prescribed by Dr. Mannix. (*Id.*). About two days after his last appointment, Dr. Mannix's office notified the jail that Plaintiff needed to be seen by a specialist for his glaucoma condition. (*Id.* at ¶ 20). Dr. Mannix sent a letter to a Dr. Gerber requesting that he examine Plaintiff. (Pl.'s Ex. R). In this letter, Dr. Mannix indicated that he contemplated sending Plaintiff back to Wishard Hospital, but chose to refer him to Dr. Gerber instead because the jail did not have transportation to the hospital available. (*Id.*).

Dr. Gerber did not treat Plaintiff, but on March 28, 2006, Dr. Karen Briggs, a glaucoma specialist, examined Plaintiff and determined that he needed surgery to treat his left eye. (Buell Aff. *¶* 22). Dr. Briggs's office scheduled the surgery for April 26, 2006, and Dr. Briggs performed the surgery on that date. Plaintiff was subsequently transported to Dr. Briggs's office in Dyer, Indiana, at least seven times for follow up visits. (*Id.* at ¶¶ 21–25). Throughout Plaintiff's time at the LaPorte County Jail, Defendants Kozlowski and Buell, followed the recommendations and directions of Plaintiff's physicians. (Kozlowski Aff. ¶ 26, Buell Aff. ¶ 14).

On June 1, 2006, Plaintiff filed a grievance with the LaPorte County Jail. (Defs.' Ex. M). In his grievance, Plaintiff alleged that he told the officer in charge of his booking that he needed medical attention for his eye, and that he was denied such treatment for three weeks. (*Id.*). Defendant Captain Buell, the LaPorte County Jail Commander, responded to Plaintiff's grievance on June 6, 2006, stating that Plaintiff did not have a valid complaint because the jail's medical procedures were followed and Plaintiff was transported to all required doctor

appointments. (*Id.*).

Following the denial of his grievance, Plaintiff filed his *pro se* Complaint, pursuant to 42 U.S.C. §1983, against Defendants Judge Thomas Alevizos, Officer Ronald Fargo, Officer Allen Schutz, Officer Christopher Froehlke, Sherry Kozlowski, and Captain Richard Buell in this Court on August 24, 2007. Plaintiff's claims against Defendant Alevizos for assault and against Defendants Fargo, Schutz, and Froehlke for failing to protect him from and conspiring to cover up the alleged assault were dismissed on May 8, 2008. On the same day, the Court granted Plaintiff leave to proceed against Defendants Kozlowski and Buell in their individual capacities for monetary and punitive damages for the denial of medical treatment in violation of the Fourteenth Amendment to the United States Constitution. (DE 9).

Defendants moved for summary judgment on May 25, 2009, to which Plaintiff responded on October 5, 2009. Defendants replied on October 20, 2009, and filed a Motion to Strike Plaintiff's Response and supporting documentation pursuant to Federal Rule of Civil Procedure 56. Defendants urge that Plaintiff's Response, affidavit, and attached exhibits A and B should be stricken because they are vague and incomplete. Defendants further maintain their motion should be granted because the documents fail to comply with the procedural requirements of Federal Rule of Civil Procedure 56(e) and Northern District of Indiana Local Rule 56.1. However, because the Court only considers facts that are admissible in evidence when making its decisions, Defendants Motion to Strike (DE 100) is denied as moot.

**B. Summary Judgment Standard**

A motion for summary judgment must be granted "if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). More specifically, Local Rule 56.1 provides that, in opposing a motion for summary judgment, the non-moving party shall file a "Statement of Genuine Issues" "setting forth, with appropriate citations to discovery responses, affidavits, depositions, or other admissible evidence, all material facts as to which it is contended there exists a genuine issue necessary to be litigated." N.D. Ind. L.R. 56.1. Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must

5

come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby,* 477 U.S. 242, 249–50 (1986).

## C. Section 1983 Standard

Section 1983 is not a source of substantive rights. Instead, it provides "a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterrey v. Del Monte Dunes at Monterrey, Ltd.*, 526 U.S. 687, 749 n.9 (1999) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To prevail on a claim under Section 1983, a plaintiff must show that "(1) the defendant deprived the plaintiff of a right secured by the Constitution and laws of the United States, and (2) the defendant acted under color of state law." *J.H. ex rel. Higgin v. Johnson*, 346 F.3d 788, 791 (7th Cir. 2003) (citing *Reed v. City of Chi.*, 77 F.3d 1049, 1051 (7th Cir. 1996)). A Plaintiff must show that the defendant was personally involved in depriving him of his constitutional rights. *See Walker v. Taylorville Corr. Ctr.*, 129 F.3d 410, 413 (7th Cir. 1997).

The parties do not dispute that Defendants acted under color of state law. Therefore, the Court must determine only if there is a genuine issue of material fact as to whether Defendants

deprived the Plaintiff of a right secured by the due process clause of the Fourteenth Amendment—that is, a right to medical treatment.

**D. Discussion**

Plaintiff was a pretrial detainee at the time of the events giving rise to his claim. Although the Eighth Amendment applies only to convicted prisoners, the due process clause of the Fourteenth Amendment extends the same standard for medical treatment to pretrial detainees. *Williams v. Rodriguez*, 509 F.3d 392, 401 (7th Cir. 2007). Under this standard, the plaintiff bears the burden of proof to show that the defendant was deliberately indifferent to his or her serious medical needs. *Id.*

A medical condition is deemed to be objectively serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). Deliberate indifference is "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks." *Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006) (quoting *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992)). To show that a defendant was deliberately indifferent, a plaintiff must demonstrate that the official "acted with a sufficiently culpable state of mind." *Hayes*, 546 F.3d at 522 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). This means that the official must know of the risk to the inmate's health and disregard it. *Id*. Furthermore, negligent conduct does not give rise to culpability under the deliberately indifferent standard. *See Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004) ("Negligence on the part of an official does not violate the Constitution, and it is not enough that he or she should

7

have known of a risk. Instead, deliberate indifference requires evidence that an official actually knew of a substantial risk of serious harm and consciously disregarded it nonetheless."). Additionally, a defendant with knowledge of a risk need not "take perfect action or even reasonable action[,] . . . his action must be reckless before § 1983 liability can be found." *Collins*, 462 F.3d at 762 (quoting *Cavalieri v. Shepard*, 321 F.3d 616, 622 (7th Cir. 2003)). Medical malpractice, without more, does not state a claim of deliberate indifference. *Walker v. Peters*, 233 F.3d 494, 499 (7th Cir. 2000).

In their Motion for Summary Judgment, Defendants urge to dismiss Plaintiff's claim that Defendants denied him adequate medical treatment for three reasons. First, Defendants contend that Plaintiff cannot prove that they were deliberately indifferent to Plaintiff's medical needs. Second, they argue that Plaintiff is unable to demonstrate that the actions of either Defendant were the cause of his injuries. Finally, Defendants maintain that they are entitled to qualified immunity.

### (1) *Defendant Kozlowski*

Plaintiff claims that Defendant Kozlowski was deliberately indifferent to his medical needs. First, Plaintiff maintains that Kozlowski did not respond to his request for medical attention and aspirin, and instead told him to fill out a request slip. Next, Plaintiff claims that he did not receive the medical attention and eye drops he needed from a doctor until about three weeks after his incarceration, that this delay resulted in increased pressure in his eye thereby making surgery necessary, and that this could have been prevented had Kozlowski timely reviewed his medical file.

Despite these contentions, Plaintiff's proffered evidence does not show that Kozlowski was deliberately indifferent to his medical needs. Plaintiff made an oral request to Defendant Kozlowski for aspirin, and was instructed to fill out a request slip. (Compl. ¶ 11). Plaintiff subsequently filled out at least two request slips for medical attention. (Compl. ¶ 12). Kozlowski replied to the request dated February 19, 2006, two days later and indicated that the Plaintiff would be seen at the next available appointment. The Plaintiff was seen by the jail physician on the following day and was subsequently referred to a specialist. While Plaintiff's previous requests for medical treatment may have been overlooked negligently, he has not provided evidence that Defendant Kozlowski deliberately ignored these requests. Furthermore, the jail physician, not Kozlowski, is responsible for making decisions about the medical treatment of inmates. (Kozlowski Aff. ¶¶ 18, 21).

Plaintiff further alleges that Kozlowski should have been aware of his eye condition at the time of his intake because of his booking photo. Although Plaintiff claims that he requested medical treatment at the time of his intake and that he did not receive this treatment until three weeks later, the record indicates that Plaintiff did not have visible signs of injury that required immediate medical attention, nor did he request such attention. Instead, the intake officer referred Plaintiff to the jail nurses for non-emergency medical care relating to his glaucoma condition. (Defs.' Ex. E, F).

Kozlowski maintains that she did not become aware that Plaintiff was suffering from glaucoma until February 14, 2006, after the other jail nurse evaluated him, and that she was never made aware of the alleged injury that occurred from Plaintiff's encounter with Judge Alevizos. (Kozlowski Aff. ¶¶ 9, 26). Plaintiff suggests that Kozlowski could have obtained

information regarding his glaucoma from his medical files; however, the record shows that Plaintiff was initially noncompliant with Kozlowski's request for his medical information. As a result, Kozlowski did not receive Plaintiff's medical file from Wishard Hospital until after the jail physician examined him. (*Id.* at ¶¶ 10, 14). Although Kozlowski may have been negligent in not obtaining Plaintiff's medical files earlier, this is not sufficient to demonstrate that Kozlowski was deliberately indifferent to Plaintiff's medical needs. The Plaintiff has not provided any evidence indicating that Defendant Kozlowski knew that the Plaintiff was at risk of serious injury if he did not receive prompt medical attention or that Kozlowski acted with a total disregard for his safety. As such, summary judgment for Defendant Kozlowski is appropriate because Plaintiff has not raised a genuine issue of material fact as to whether she was deliberately indifferent to his medical needs.

*(2) Defendant Buell*

Plaintiff's claim that Defendant Buell was deliberately indifferent to his medical needs is twofold. First, he asserts that Buell had the authority to make medical decisions and failed to approve his surgery in a timely manner. Second, Plaintiff maintains that Buell violated his Fourteenth Amendment rights by not sending him to Wishard Hospital, where he was previously treated for glaucoma. Both of these arguments fail, as Plaintiff has fallen short of producing evidence showing Defendant Buell was in fact deliberately indifferent to his medical needs.

Plaintiff alleges that Defendant Buell had medical decision-making authority to schedule his surgery, but he does not provide any evidence to support this claim. Plaintiff provides copies of several LaPorte County Jail medical policies; however, none of these indicate that the jail

commander has the ability to dictate what type of medical treatment an inmate receives or when such treatment is provided. Additionally, Defendant Buell stated in his affidavit that he is not responsible for scheduling inmates' medical appointments and that it was Dr. Briggs' office, not he, who chose the date for Plaintiff's surgery. (Buell Aff. ¶¶ 7, 24, 27). Without providing evidence to contradict these statements, Plaintiff has failed to raise a genuine issue of material fact as to whether the Defendant was deliberately indifferent to his medical needs.

Plaintiff's argument that Defendant Buell was deliberately indifferent to his medical needs by not sending him to the hospital where he previously received treatment is also flawed. In support of his proposition, Plaintiff points to a letter written by Dr. Mannix to Dr. Gerber, requesting him to examine Plaintiff. (Pl.'s Ex. R). In this letter, Dr. Mannix indicated that he originally thought about sending Plaintiff to the hospital in Indianapolis (Wishard Hospital), where he was previously treated for his glaucoma, but because the jail did not have the necessary transportation arrangements available, he decided to refer Plaintiff to him instead.

Although this letter demonstrates that Dr. Mannix considered sending Plaintiff to Wishard Hospital, it does not indicate that Dr. Mannix recommended this option to Defendant Buell. Instead, the record shows that on March 17, 2006, Dr. Mannix suggested that a glaucoma specialist examine Plaintiff, and that such specialist saw Plaintiff on March 28, 2006. (Defs.' Ex. G, H). This supports Defendant's assertion that he followed the medical doctor's recommendations regarding Plaintiff's care. (Buell Aff. ¶ 14).

Furthermore, while Plaintiff was entitled to medical care as a pretrial detainee, he was not entitled to the best possible care, nor was he entitled to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Instead, Plaintiff was entitled to "reasonable measures to meet

11

a substantial risk of serious harm to [him]." *Id.* Because Plaintiff was transported to see the required medical professionals and obtained the treatment, including surgery, necessary for his condition, Plaintiff received the medical care to which he was entitled. Moreover, when an inmate is under the supervision of medical personnel, non-medical officials typically cannot be held liable for decisions made relating to the inmate's medical care. *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005).

Plaintiff has not provided evidence demonstrating that Defendant Buell was responsible for making decisions concerning his medical treatment. Nor has he shown that Defendant Buell knew that there was a substantial risk of harm to Plaintiff if he did not receive treatment from Wishard Hospital, and yet decided not to send him there with a conscious disregard for this potential harm. Because Plaintiff has not met his burden of proof to raise a genuine issue of material fact indicating that Defendant Buell was deliberately indifferent to his medical needs, summary judgment for Defendant Buell is proper.

As Plaintiff has not provided sufficient evidence demonstrating a genuine issue of material fact relating to his claim, the Court need not address the Defendants' final two arguments.

**E. Conclusion**

The Defendants' motion for summary judgment (DE 91) is GRANTED and Defendants' motion to strike Plaintiff's response (DE 100) is DENIED as moot.

SO ORDERED on January 13, 2010.

s/ Joseph S. Van Bokkelen
Joseph S. Van Bokkelen
United States District Judge